In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3812

FRED WASHINGTON,

*Plaintiff-Appellant*,

*v.*

LAPORTE COUNTY SHERIFF'S DEPARTMENT,
LAPORTE COUNTY JAIL, and ROBERT BLAIR,
individually and in his former capacity as
Sheriff of LaPorte County,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00-CV-0506-RM—**Robert L. Miller, Jr.**, *Judge*.

ARGUED MAY 28, 2002—DECIDED OCTOBER 7, 2002

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. While Fred Washington was detained in the LaPorte County Jail, he was attacked by another inmate and lost an eye. Washington filed suit against the jail and its officers, alleging that his injury was caused by the prison's cell assignment policy in violation of his constitutional right to due process. He now appeals the district court's grant of summary judgment in favor of the defendants. Since Washington has not provided any evidence as to the prison officials' state of

mind regarding the jail's conditions, we affirm the district court's grant of summary judgment in favor of the defendants.

## I. BACKGROUND

Fred Washington was charged with driving with a suspended license and detained in the LaPorte County Jail pending trial, as he could not post bond. He was assigned to a cell block originally designed to house ten inmates but which actually housed seventeen. Prison officials allowed inmates to choose their own cell assignments; Washington shared a cell with another inmate, Carl Hood.

After bunking with Hood for approximately two weeks without incident, a new inmate arrived in the cell block who belonged to the same gang as Hood. Washington was "neutral," *i.e.*, not affiliated with any gang. Washington returned to his bunk that evening to find Hood throwing Washington's possessions out of their shared cell and into the common area. This led to a physical confrontation which ended when other inmates intervened. A different inmate offered Washington a new bunk, Hood's gang associate took Washington's old bunk, and Washington and Hood shook hands, which Washington understood to signal the end of the conflict. Neither Washington nor the other inmates notified guards in the area of the altercation.

Later that evening, while Washington was watching television in the common area, Hood approached from behind and hit Washington in the eye with a "sock jack," a weapon made of soap bars wrapped in a sock. Other inmates again intervened, stopping any further fighting. Washington did not notify the guards of the incident, but when another inmate saw the seriousness of the injury, he called the guards and Washington received immediate medical attention. Upon arrival at a local hospital, doctors

determined that the damage to the eye was irreparable and removed it.

Washington filed suit against the LaPorte County Sheriff, the LaPorte County Jail, and several prison officers for violation of his constitutional rights under 42 U.S.C. § 1983, alleging that the lack of specific bunk assignments caused his injury and demonstrated "deliberate indifference" on the part of prison officials to a substantial risk of serious harm. The district court granted summary judgment in favor of the defendants.

## II. ANALYSIS

We review de novo the district court's decision to grant summary judgment. *Traylor v. Brown*, 295 F.3d 783, 787 (7th Cir. 2002). A court may grant summary judgment only if there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Since Washington was a pre-trial detainee, we examine his § 1983 claim under the Due Process Clause rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979), *Zentmeyer v. Kendall Cty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000). The protections for pre-trial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), and we frequently consider the standards to be analogous. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002). Since the parties base their arguments on Eighth Amendment precedent, we examine them under that standard. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996).

While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every

injury within a prison is an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have violated an inmate's Eighth Amendment rights if there was a risk of injury that objectively was "sufficiently serious," *id.*; *see also Delaney v. DeTella*, 256 F.3d 679, 683-86 (7th Cir. 2001), and if the officials showed "deliberate indifference" to that substantial risk. *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To demonstrate "deliberate indifference," Washington must show actual knowledge by the officials and guards of the existence of the substantial risk and that the officials had considered the possibility that the risk could cause serious harm. *Farmer*, 511 U.S. at 837. However, ordinary negligence by prison officials is not enough to show an Eighth Amendment violation. *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *see also Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Mere negligence or even gross negligence does not constitute deliberate indifference."). Prison officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 838. *Farmer*'s standard does not require actual knowledge of an individualized threat—"it is enough that defendants are aware that their action may cause injury without being able to divine the most likely victim." *Delaney*, 256 F.3d at 686; *Farmer*, 511 U.S. at 843. If a prison maintains such a policy, it can be held liable under § 1983. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998).

The only evidence Washington presented to demonstrate the officials' "deliberate indifference" was based on the work of Thomas Rosazza, Washington's jail management procedures expert. Rosazza concluded that allowing inmates to choose their own bunks created "a high probability of inmate-on-inmate assault." Rosazza Aff. ¶6. Though this would seem to suggest a significant risk to

inmate safety, Rosazza's conclusions are not enough to satisfy *Farmer*'s second prong, which emphasizes the subjective nature of a deliberate indifference inquiry.

Though a risk may be obvious to a reasonable person, *Farmer* explicitly adopted a subjective test, describing an objective standard as "not an appropriate test for determining the liability of prison officials under the Eighth Amendment." *Farmer*, 511 U.S. at 841. The key is that the individuals must have *actual* knowledge of the risk. *See Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002) ("[T]he test is whether the guards know that the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."). Here, Washington did not present any facts from which a jury could find that the prison guards were aware of a substantial risk that *Washington* might be harmed. Instead he relies on Rosazza's conclusion that allowing the inmates to control bunk assignments was an obvious risk that the prison officials should have recognized. There was no evidence that Washington expected to be attacked by Hood, or that he or prison officials should have expected an attack. He shared his cell with Hood for two weeks without incident, did not inform the guards that Hood had thrown him out of their shared cell, that he had briefly fought with Hood, or that he in any way feared harm from Hood or another inmate. *See id*. (finding evidence of deliberate indifference when "the defendants knew that [one inmate] posed a serious danger to [another inmate] and they could have averted the danger easily"); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002) (finding evidence of deliberate indifference if it was possible that a guard re-armed an inmate just after the inmate had attacked the plaintiff). Once the guards learned of Washington's attack, they immediately removed him from the cell block, gave him appropriate medical care, and when the extent of his injuries was determined, sent him to an area hospital. As the district

court noted, "[t]hat displays deliberate care, not deliberate indifference." Mem. op. at 7.

Under some circumstances, a risk might be so obvious that actual knowledge on the part of prison officials may be inferred. *See Farmer*, 511 U.S. at 842. Examples of "obvious" risks involving inmate violence include when a "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Id*. Though Washington does not need to point out specific incidents of past violence at the LaPorte County Jail, *see Estate of Cole*, 94 F.3d at 260 ("proof that the defendant had the requisite knowledge of substantial risk through circumstantial evidence of the risk's obviousness does not require evidence of past injury caused by the same risk or evidence that a defendant had recognized the risk before"), he has provided no evidence suggesting that violence was a pervasive element of the jail's environment or that there was any increased risk of violence at the jail compared to other jails with different housing policies.

Simply describing the jail officials as deliberately indifferent because they made a decision to implement a program which, in general terms, could increase the probability of violence, ignores the subjective element of *Farmer*'s test. Neither the facts of the case nor Washington's expert offers support for the conclusion that this incident was anything more than an unfortunate random act of violence in a prison, which does not impose liability on prison officials. *Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir. 1984).

### III.  CONCLUSION

As Washington has not offered sufficient evidence of deliberate indifference required to show a violation of his due process rights, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*